AUDREY FOSTER BOOTH AND BENJAMIN D. FOSTER, III
v.
ELIZABETH FOSTER AMBERG.
No. 2007 CA 2560.
Court of Appeals of Louisiana, First Circuit.
September 19, 2008.
JEFFERY T. OGLESBEE, Attorney for Plaintiff-Appellee Audrey Foster Booth
ROBERT H. HARRISON, JR., Attorney for Plaintiff-Appellant Benjamin D. Foster, III
ELIZABETH FOSTER AMBERG, In Proper Person Defendant-Appellant.
Before PARRO, McCLENDON, and WELCH, JJ.
WELCH, J.
In this dispute among co-owners of property held in indivision, the defendant, Elizabeth Foster Amberg, and a co-plaintiff, Benjamin D. Foster, III, appeal from a judgment ordering the co-owned property to be partitioned by licitation. For the following reasons, we amend the judgment of the trial court and affirm as amended.

I. FACTUAL AND PROCEDURAL HISTORY
Elizabeth Foster Amberg ("Ms. Amberg"), Benjamin D. Foster, III ("Mr. Foster"), and Audrey Foster Booth ("Mrs. Booth") are siblings and co-owners in indivision of a 27.441 acre tract of land located on Amvets Road in Livingston Parish ("the property").[1] The parties acquired co-ownership of the property by inheritance from their father, Benjamin D. Foster, II, and by donation from their mother, Elizabeth Haluska Foster ("Mrs. Foster"), on September 29, 1999. Prior to the September 29, 1999 donation, Mrs. Foster also donated approximately one acre to each of the parties individually. Those individually owned one-acre tracts are contiguous with the property at issue.
After the parties' mother died, the parties verbally agreed that the property would be partitioned according to a survey plat prepared by Mark Thomas Chemay ("the Chemay survey"), a registered professional land surveyor. The Chemay survey divided the property into five tracts of land, and allocated each of the parties a tract of land contiguous with the one-acre tract that they individually owned. Since the tract of land allocated to Mr. Foster had Mrs. Foster's home situated on it, Ms. Amberg and Mrs. Booth were also allocated, individually, an additional tract that was not contiguous with their property. Specifically, the Chemay survey allocated Ms. Amberg a total of 10.961 acres (4.838 acres contiguous with her individually owned one-acre tract ("tract 4") and 6.123 acres that were not contiguous with her one-acre tract ("tract 1")). Mrs. Booth was allocated a total of 9.396 acres (5.314 acres contiguous with her individually owned one-acre tract ("tract 5") and 4.082 acres that were not contiguous with her one-acre tract ("tract 2")). Mr. Foster was allocated a total of 7.084 acres contiguous with his individually owned one-acre tract ("tract 3") and Mrs. Foster's home. The Chemay survey was filed for registry and recorded in the clerk of court's office for Livingston Parish on October 15, 2003.
In accordance with the verbal agreement of the parties, an act of partition was drafted. However, after a dispute arose among the parties in Mrs. Foster's succession proceedings, Ms. Amberg refused to sign the proposed act of partition. Therefore, on February 2, 2004, Mrs. Booth and Mr. Foster brought this suit against Ms. Amberg alleging that Ms. Amberg had refused all efforts to amicably divide the property, and therefore, requested a judicial partition of the property.
Ms. Amberg answered and asserted that she had not refused to amicably divide the property, but rather, that the plaintiffs had failed to propose a reasonable and equitable division of the property, as the tract of land allocated to her in the proposed partition was enclosed and burdened by a servitude in favor of Livingston Parish. Ms. Amberg also filed a reconventional demand, requesting a judicial partition in kind of the property.
Thereafter, Mrs. Booth, who initially desired a partition in kind according to the Chemay survey, decided that she wanted a partition by licitation. Mr. Foster, who maintained his desire to partition the property in kind, then aligned himself in the proceedings with Ms. Amberg, since she also sought partition in kind.
The parties appeared in court on March 6, 2006, and Ms. Amberg attempted to confirm a default judgment on her reconventional demand and to have the court order a partition in kind. Instead, counsel for Mrs. Booth requested that the court appoint an expert to determine if the property was capable of partition in kind or whether it should be partitioned by licitation. At the urging of counsel for Mrs. Booth, Ms. Amberg and Mr. Foster ultimately stipulated to the appointment of Tommy McMorris as the expert in the case. The trial court specifically directed that Mr. McMorris was to review all surveys previously done on the property (i.e., the Chemay survey), inspect the property, and give the court an expert opinion on whether the property could be divided in kind or should be partitioned by licitation.
Thereafter, Mr. Foster filed a supplemental and amending petition, alleging that it was not in the best interest of the co-owners that the property be partitioned by licitation and that the property was subject to division in kind. Additionally, Mr. Foster sought a declaratory judgment recognizing the parties' prior extrajudicial partition in accordance with the Chemay survey, pursuant to La. C.C. art. 1839.
On April 25, 2007, the trial court set the matter for trial the week of July 30, 2007, with a pre-trial conference to be held on July 30, 2007, at 1:00 p.m. On July 26, 2007, Ms. Amberg filed a motion to continue the trial, requesting a continuance of at least sixty days so that her expert, Mr. Larry Bankston, could complete his evaluation of the property. On July 30, 2007, the trial court denied the continuance.
The matter came for trial on August 1, 2007. At the conclusion of trial, the trial court rendered judgment ordering that the co-owned property be partitioned by licitation and placed for sale sixty days from the date of the judgment, unless the parties mutually agreed to buy each other out. A written judgment in conformity with the trial court's ruling was signed on September 20, 2007. From this judgment, both Ms. Amberg and Mr. Foster have appealed.
Also pending before this court is a motion to supplement the appellate record filed by Ms. Amberg. In this motion, Ms. Amberg seeks to supplement the record with documents from Mrs. Foster's succession proceedings, which she contends are material to the issues raised in this appeal.[2]

II. ASSIGNMENTS OF ERROR
On appeal, Mr. Foster and Ms. Amberg contend that the trial court erred in ordering a partition by licitation of the property, because the evidence demonstrated the parties reached a conventional partition agreement (or extrajudicial partition) and all of the co-owners acknowledged such agreement under oath. Additionally, Ms. Amberg contends that the trial court further erred in denying her motion to continue the trial so that she could obtain an expert[3] and in ordering a partition by licitation of the property because Mrs. Booth failed to prove that the property was not divisible in kind.

III. MOTION TO SUPPLEMENT
Louisiana Code of Civil Procedure article 2164 states that an "appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments, and other rulings, unless otherwise designated. Tranum v. Hebert, 581 So.2d 1023, 1026 (La. App. 1st Cir.), writ denied, 0584 So.2d 1169 (La. 1991). An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Id. Louisiana Code of Civil Procedure article 2132 provides that "[al record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court."
In this case, Ms. Amberg's remaining motion to supplement does not seek to correct any facts or mistakes, nor does it allege any deficiencies in the records. Instead, her motion seeks to enter into the record certain documents from Mrs. Foster's succession proceedings. With regard to those documents, the trial transcript reveals that at the close of Ms. Amberg's testimony, the trial court inquired as to whether Ms. Amberg had "anything else for the record." Ms. Amberg replied "No, that's it, but I have some things I need to file." Presumably, she meant that she had some documents to file into the record. However, there is no recording of what these "things" or documents were. The index of exhibits reveals that the appraisal by Mr. McMorris and the Chemay survey were the only exhibits introduced and accepted into evidence. A review of the entire trial transcript does not reveal that Ms. Amberg ever sought to introduce any pleadings or documents from Mrs. Foster's succession proceedings. Thus, Ms. Amberg's motion seeks to supplement the record with unidentified documents from a separate proceeding that were not filed into the record at the trial court. This is a request to enter into the record new evidence not heard or considered by the trial court. An appellate court is not vested with the right to receive or hear new evidence that is not part of the record in the trial court. See Tranum, 581 So.2d at 1026. Thus, Ms. Amberg's motion to supplement the record is hereby denied.

IV. CONTINUANCE
At a pre-trial conference on April 25, 2007, the trial court scheduled the trial of this matter to begin the week of July 30, 2007. On July 26, 2007, Ms. Amberg filed a motion for continuance, alleging that the market value of the property had increased over the past three years since this litigation commenced, that Mr. McMorris's appraised value of the property was below the market value of the property, and that she desired to have her own expert appraise the property and present his findings at trial. However, she asserted that her expert, Mr. Bankston, would not be able to complete his appraisal of the property until the last week of August 2007, and therefore, she needed a continuance of sixty days. On July 30, 2007, the trial court denied the continuance. On appeal, Ms. Amberg asserts that the trial court erred in not granting her a continuance so that she could obtain an expert to evaluate the property.
A trial court may grant a continuance on peremptory or discretionary grounds. La. C.C.P. arts. 1601 and 1602. There are only two peremptory grounds for continuance: (1) the party seeking the continuance, despite due diligence, has been unable to obtain material evidence; or (2) a material witness is absent without the contrivance of the party applying for the continuance. La. C.C.P. art. 1602; St. Tammany Parish Hospital v. Burris, 2000-2639, p. 4 (La. App. Cir. 12/28/01), 804 So.2d 960, 963.
Ms. Amberg did not allege in her motion to continue, nor does the record reflect, that a material witness has absented himself or that despite "due diligence," she has been unable "to obtain evidence material to [her] case," peremptory grounds which would have required the trial court to grant a continuance under La. C.C.P. art. 1602.
Absent peremptory causes, a continuance rests within the sound discretion of the trial court. Sparacello v. Andrews, 501 So.2d 269, 273 (La. App. 1st Cir. 1986), writ denied, 502 So.2d 103 (La. 1987). Louisiana Code of Civil Procedure article 1601 provides, "A continuance may be granted in any case if there is good ground therefor." A trial court has wide discretion in the control of its docket, in case management, and in determining whether a motion for continuance should be granted. Specifically, in deciding whether to grant or deny a continuance, the trial court should consider the diligence and good faith of the party seeking the continuance and other reasonable grounds. St. Tammany Parish Hospital, 2000-2639 at p. 4, 804 So.2d at 963. The trial court may also weigh the condition of the court docket, fairness to the parties and other litigants before the court, and the need for orderly and prompt administration of justice. Id.; Our Lady of the Lake Hospital v. Vanner, 95-0754, pp. 3-4 (La. App. 1st Cir, 3/27/97), 692 So.2d 40, 42, writ denied, 97-1567 (La. 9/26/97), 701 So.2d 992; Norwood v. Winn Dixie, 95-2123, p. 3 (La. App. 1st Cir. 5/10/96), 673 So.2d 360, 362. The trial court's ruling on a motion to continue will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. Young v. Bayou Steel Corp., 588 So.2d 171, 172 (La. App. 5th Cir. 1991). Appellate courts interfere in such matters only with reluctance and in extreme cases. Sparacello, 501 So.2d at 274.
In this case, Ms. Amberg's motion for a continuance was filed four days before the commencement of trial that was scheduled approximately fourteen weeks earlier. Previously, on June 22, 2007, Ms. Amberg filed a motion alleging that Mr. McMorris's report was inconsistent with partitioning the property in kind amongst the co-owners and requesting that his evaluation of the property be "void[ed]." Thus, at least forty days before trial, Ms. Amberg was aware of Mr. McMorris's opinion with regard to the property and as such, had sufficient notice that she might need her own expert to rebut his finding.
Moreover, we find that Mrs. Booth's interest in having this partition suit judicially resolved within a reasonable time and the trial court's interest in controlling its docket outweigh any possibilities of prejudice that may have resulted from the denial of a continuance. Ms. Amberg's motion for a continuance specifically indicated that she wanted a continuance so that she could obtain her own expert's appraisal of the property, because she claimed that Mr. McMorris's appraisal of the property was below its market value. However, Mr. McMorris admitted at trial that his appraisal was performed a year before trial in July 2006, that the property's value had increased since that time, and that his appraisal would have to be updated. Thus, this is not an extreme situation resulting in prejudice to Ms. Amberg that would justify interference by this court with the trial court's decision to deny the continuance.
Considering all of the facts of this case, we do not find that the trial court abused its discretion in denying Ms. Amberg's request for a continuance, and accordingly, the trial court's ruling in this regard is hereby affirmed.

V. PARTITION

A. General Legal Precepts of Co-ownership
Ownership of the same thing by two or more persons is ownership in indivision. La. C.C. art. 797. No one may be compelled to hold a thing in indivision with another unless the contrary has been provided by law or juridical act; any co-owner has a right to demand partition of a thing held in indivision. La. C.C. art. 807. Partition of property may be either nonjudicially or judicially. La. C.C.P. art. 4601; see La. C.C. art. 809. If all of the co-owners cannot agree on the mode of partition, a co-owner may demand judicial partition. La. C.C. art. 809; see La. C.C.P. art. 4602.

B. Nonjudicial Partition
Ms. Amberg and Mr. Foster contend that the trial court erred in ordering a judicial partition by licitation of the property because the parties had orally agreed to partition the property according to the Chemay survey and all of the parties acknowledged the oral agreement under oath. Generally, a transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer under oath. La. C.C. art. 1839.
We agree with Mr. Foster and Ms. Amberg that at trial, all of the parties admitted under oath that at the time the Chemay survey was filed for registry and recorded in the clerk of court's office for Livingston Parish on October 15, 2003, the Chemay survey accurately reflected the parties' oral agreement as to how the property would be partitioned. However, in order for this oral agreement to constitute a valid transfer of the property, actual delivery of the tracts of land to each of the parties, as depicted in the Chemay survey, must also have been made. See La. C.C. art. 1839.
The term "actual delivery" means that the immovable, which is the object of the oral transfer, has in fact been transferred or placed into the power and possession of the transferee. See Martin v. Brister, 37,011, p. 3 (La. App. 2nd Cir. 7/23/03), 850 So.2d 1106, 1110, writ denied, 2003-2374 (La. 11/21/03), 860 So.2d 550; Duhon v. Dugas, 407 So.2d 1334, 1338-1339 (La. App, 3rd Cir. 1981). A determination of whether actual delivery of an immovable has been made depends on the facts and circumstances of each individual case. See Duhon, 407 So.2d at 1339.
Mr. Foster and Ms. Amberg contend that the act of recording the Chemay survey with the clerk of court for Livingston Parish was sufficient, under the circumstances, to constitute an actual delivery of the tracts of land to each of the parties within the meaning of La. CC. art. 1839. However, after considering all of the evidence, the trial court found that there had been no actual delivery of the tracts of land to the parties in accordance with the Chemay survey. Therefore, the trial court concluded that the parties' oral partition agreement was not a valid nonjudicial partition or transfer of the property under La. C.C. art. 1839.
The trial court's determination that there had been no actual delivery of the property to the parties in accordance with the Chemay survey was a factual one. As an appellate court, we cannot set aside a trial court's factual findings unless we determine that there is no reasonable factual basis for the findings and that the findings are clearly wrong. Stobart v. State, DOTD, 617 So.2d 880, 882 (La. 1993). If the findings are reasonable and not clearly wrong in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
We find the record before us devoid of any evidence demonstrating that the parties were exercising power and possession over the individual tracts of land allocated to them in the Chemay survey. During the trial, Ms. Amberg stated that she wanted to farm her tracts of land but could not "do anything until this [the partition litigation] is over." Since Ms. Amberg did not feel free to farm or do anything else to the tracts of land allocated to her in the Chemay survey, she was not exercising "power and possession" over those tracts of land. Thus, the trial court's factual finding that the parties had not taken actual delivery of the tracts of land allocated to them in the Chemay survey was reasonably supported by the record and was not clearly wrong. Therefore, we find no error in the trial court's conclusion that the parties' oral partition agreement was not a valid oral transfer of the property under La. C.C. art. 1839.

C. Judicial Partition
Louisiana Civil Code article 810 provides that the court shall decree partition in kind when the thing held in indivision is susceptible to division into as many lots of nearly equal value as there are shares and the aggregate value of all lots is not significantly lower than the value of the property in the state of indivision. However, when the thing held in indivision is not susceptible to partition in kind, the court shall decree a partition by licitation or by private sale and the proceeds shall be distributed to the co-owners in proportion to their shares. La. C.C. art. 811. Unless the property is indivisible by nature or cannot conveniently be divided, the court shall order a partition to be made in kind. La. C.C.P. art. 4606. Thus, the general rule is that when the thing held in indivision is susceptible to partition in kind, a partition in kind is favored over a partition by licitation or by private sale. Tri-State Concrete Co., Inc. v. Stephens, 406 So.2d 205, 207-208 (La. 1981).
In order to effect a partition in kind, the property must be divided into lots of equal or nearly equal value. Id. There must be as many lots as there are shares or roots or co-owners involved. Id. It is the function of experts to form the lots, which thereafter must be drawn by chance, and not selected, by the co-owners. It is not within the power or province of the judge or the experts to suggest that a certain part or parts of the property be set apart or allocated to one of the coowners. Id.; see Raceland Bank & Trust Co. v. Toups, 173 La. 742, 138 So. 652 (1931); Pryor v. Desha, 204 La. 575, 15 So.2d 891 (1943).
The party seeking partition by licitation has the burden of proving that the property cannot be divided in kind. Cooper v. Buxton, XXXX-XXXX, p. 2 (La. App. 3st Cir. 4/2/08), 979 So.2d 1291, 1292. Whether and how property is partitioned is fact-specific, considering such factors as the natural characteristics of the land, size of a tract, presence or absence of public road access, number of co-owners in indivision, and existence of any contamination. Cahill v. Kerins, 34,522, p. 6 (La. App. 2nd Cir. 4/4/01), 784 So.2d 685, 690; Pugh v. NPC Services, Inc., 97-2360 (La. App. 1st Cir. 11/6/98), 721 So.2d 1056, 1058, writ denied, 98-3052 (La. 2/5/99), 738 So.2d 4. The decision of whether to divide property in kind or by licitation is a question of fact to be decided by the trial court. Cooper, XXXX-XXXX at p. 2, 979 So.2d at 1292.
In this case, Mrs. Booth, as the party seeking a partition by licitation, had the burden of proving that the property could not be partitioned in kind. Since there are three co-owners each owning an undivided one-third interest in the property, Mrs. Booth had to establish that the property could not be divided into three equal or nearly equal tracts of land of nearly equal value that could be randomly drawn by the co-owners.
Mr. McMorris, a real estate appraiser previously appointed by the court as an expert in this case, opined that the property could not be partitioned in kind. He based his opinion on the fact that the property was irregularly shaped or L-shaped, that only a small portion of the property had frontage on Amvets Road and therefore public road access was limited, that the property had a house situated on it (although the house was in need of repair), and that servitudes would have to be acquired in order for the property to meet Livingston Parish's drainage, sewer, and utility regulations and guidelines. Given these factors, Mr. McMorris concluded that the property could not be divided into three equal lots that could be randomly allocated to each of the parties.
Mr. Foster and Ms. Amberg countered that it was possible to partition the property in kind, as evidenced by the manner in which the Chemay survey partitioned the property. However, we note that the Chemay survey divided the property into five tracts of land varying in acreage and allocated the house situated on the property to Mr. Foster. The Chemay survey did not divide the property into three equal (or nearly equal) tracts as is necessary to have a partition in kind. Although Mr. Foster and Ms. Amberg acknowledged that the five tracts into which the Chemay survey divided the property were not equal lots in terms of acreage, they considered the division of the five tracts in accordance with the Chemay survey to be equal when other factors, such as high and low areas, ownership of the adjacent or contiguous properties, and natural drainage, were considered. Mr. Foster and Ms. Amberg also considered the limited road access factor irrelevant, because the Chemay survey allocated the five tracts of land according to the individual ownership of the one-acre tracts contiguous with such tracts. However, this factor demonstrates that the division of the property in accordance with the Chemay survey would not be a division of the property into tracts of land that could be randomly drawn by the co-owners, a necessary requirement for a partition in kind. Instead, the Chemay survey is an allotment of specific tracts of land to specific co-owners. Neither a co-owner nor the court can select a particular tract of land and have it allocated to a co-owner as a mode of partition in kind. See Wyche v. Taylor, 191 La. 891, 186 So. 602, 604 (1939).[4]
After considering all of the evidence, the trial court apparently determined that Mrs. Booth met her burden of proving that the property could not be partitioned in kind, and therefore, ordered that the property had to be partitioned by licitation. The trial court's determination in this regard was, again, a factual one, which cannot be disturbed by this court in the absence of manifest error. After a thorough review of the record, we find the trial court's conclusion was reasonable and was not clearly wrong.
Accordingly, we find no manifest error in the judgment of the trial court.
However, La. C.C.P. art. 1919 states that all final judgments affecting title to immovable property must describe with particularity the immovable property affected by the judgment. The judgment in this case states only that "the approximately 27.441 acres located in Section 34, Township 6 South, Range 6 East, which is co-owned by Audrey Foster Booth, Benjamin Foster, and Elizabeth Foster Amberg, shall be partitioned by licitation." This description does not fully identify the affected property. However, the record includes the Chemay survey of the property, as well as a full legal description in the McMorris appraisal, which corresponds to the Chemay survey. Therefore, we will amend the trial court judgment to include the full legal description of the immovable property at issue and affirm the judgment as amended.

VI. CONCLUSION
For all of the above and foregoing reasons, the September 20, 2007 judgment of trial court ordering that the 27.441 acres co-owned by Audrey Foster Booth, Benjamin D. Foster, III, and Elizabeth Foster Amberg be partitioned by licitation is hereby amended to fully described the affect immovable property as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the approximately 27.441 acres located in Section 34, Township 6 South, Range 6 East, of Livingston Parish, Louisiana, which is co-owned by Audrey Foster Booth, Benjamin Foster, and Elizabeth Foster Amberg, shall be partitioned by licitation and placed for Sheriffs sale sixty (60) days from the date this judgment becomes final, unless the parties mutually agree to buy each other out.
The property is more particularly described as follows:
Commencing at the Southwest corner of the Northwest quarter of the Northeast quarter of Section 34, T6S, R6E, which is also the point of beginning:
Thence North 00 degrees 05 minutes 49 seconds West, 664.93 feet;
Thence North 89 degrees 53 minutes 06 seconds East, 669.14 feet;
Thence North 00 degrees 05 minutes 19 seconds East, 418.71 feet;
Thence South 89 degrees 35 minutes 53 seconds East, 187.96 feet;
Thence North 00 degrees 10 minutes 03 seconds East, 245.97 feet;
Thence North 89 degrees 41 minutes 10 seconds East, 80.30 feet;
Thence South 00 degrees 15 minutes 57 seconds West, 238.79 feet;
Thence North 89 degrees 33 minutes 19 seconds East, 193.17 feet;
Thence North 00 degrees 16 minutes 31 seconds East, 16.80 feet;
Thence North 89 degrees 34 minutes 22 seconds East, 208.71 feet;
Thence South 00 degrees 12 minutes 08 seconds West, 1109.71 feet;
Thence South 89 degrees 56 minutes 19 seconds West, 1334.55 feet to the point of beginning, containing 27.441 Acres.
In all other respects, the judgment of the trial court is affirmed.
All costs of this appeal are assessed equally to the appellant/plaintiff, Benjamin D. Foster, III and the appellant/defendant, Elizabeth Foster Amberg.
MOTION TO SUPPLEMENT DENIED. AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] In the act of donation, the property is more particularly described as follows:

Fifty (50) acres of land being the West Half of the Southwest Quarter of the Southeast Quarter of Section 27, and the East Half of the Northwest Quarter of the Northeast Quarter of Section 34, and the Southwest Quarter of the Northwest Quarter of the Northeast Quarter of Section 34, all in Township 6 South, Range 6 East, together with all buildings and improvements thereon, and situated in Livingston Parish, Louisiana, and all as per survey of C.M. Moore, C.E., dated September 16, 1950, a copy of which has been filed for record.
LESS AND EXCEPT:
Approximately three (3) acres of the above described property were previously donated to [Mr. Foster, Ms. Amberg, and Mrs. Booth] (approximately one (1) acre each) and recorded in the official records of Livingston Parish, State of Louisiana.
It should be noted that although the act of donation provides for the donation of approximately 47 acres of land, only 27.441 acres are at issue in this appeal. According to Ms. Amberg, the 27.441 acres at issue lie on the south side of Amvets Road, while the remaining 20 acres (not at issue) lie on the north side of Amvets Road.
[2] In her motion to supplement, Ms. Amberg also sought to have the transcript from the March 6, 2006 hearing (wherein Mr. McMorris was appointed as an expert) supplemented into the record. Since the transcript was prepared, but inadvertently left out of the record, this court granted that portion of the motion to supplement the record, but deferred the remaining issue to this panel. See Audrey Foster Booth and Benjamin D. Foster, III v. Elizabeth Foster Amberg, 2007-2560 (La. App. 10 Cir. 3/20/08) (unpublished action on motion).
[3] The denial of a motion for continuance is generally considered an interlocutory ruling or judgment and is not appealable. See La. C.C.P. arts. 1841 and 2083. However, in this case, we can consider the correctness of this interlocutory ruling in conjunction with the appeal of the judgment ordering the partition by licitation and sale of the property, which is a final and appealable judgment. See Ballard v. Waltz, XXXX-XXXX, pp. 4-5 (La. App. 1st Cir. 12/28/06), 951 So.2d 335, 338, writ denied, XXXX-XXXX (La. 6/15/07), 958 So.2d 1193; People of Living God v. Chantilly Corp., 251 La. 943, 947-948, 207 So.2d 752, 753 (1968).
[4] Although the law at that time provided for only two types of judicial partitions in kind or by licitation, the court found that the parties' agreement to divide the property in kind was unenforceable, since a judicial partition of real estate cannot be made otherwise than by the drawing of lots (i.e., in kind) or by a sale of the property and a division of the proceeds. (i.e., by licitation). Wyche, 186 So. at 604.